Gridley, J.
— A large part of the manorial lands in this state were originally settled under leases in fee, leases for lives, or a long term of years. In other words, the proprietors, instead of *selling their lands, out and out, to purchasers, demised them to L tenants, for long periods of time, reserving an annual rent, in money, produce or services. Experience proved that this mode of settling the country was prejudicial to the prosperity and interests of the state, as a question of political economy. The proprietors owning the lands, and the tenants having only the usufructuary interest, subject to be lost by forfeiture, by a non-performance of any of the conditions of the lease, the latter felt none of the pride of independent ownership, and no desire to improve, by the best mode of cultivation, an inheritance which was liable to pass from them, or their descendants, without a compensation. Impressed with the conviction of this truth, the framers of the constitution of 1846, by a provision in the fundamental law, abrogated these' tenures, and provided by the 14th section of the 1st article, “ that no lease or grant of agricultural land, for a longer period than twelve years, thereafter made, in which should be reserved any rent or service of- any kind, should be valid.”
The question involved in this cause is, whether the agreement between the parties to this suit, bearing date the 26th day of November 1847, is a lease or grant *426 falling within the prohibition contained in this clause of the constitution. The instrument in question was intended to embrace several distinct objects, and is very unskilfully and inartificially drawn. It commences, by declaring that Mary Stephens does hereby “lease, sell and convey to the said Samuel Reynolds, for and during the natural life of the said Mary, the whole and entire use and benefit of all the real estate of the said Mary, &c., and also the use of the personal property and estate of the said Mary, except such of the said personal property as she shall dispose of; to have and to hold the same, and the use thereof, during the life of the said Mary Stephens.” Then follows a covenant on the part of the said Mary, that she will, by her last will and testament, devise to the said Hannah and her heirs in fee for ever, all that lot or parcel of land (describing it) which the plaintiff seeks in this action to recover. The * arq i agreemeut then proceeds *with a covenant on the J part of the said Samuel Reynolds, expressed to be in consideration of the said agreement, and of one dollar to him in hand paid, to remove on to the said land above mentioned, and that, during the natural life of the said Mary, he will comfortably and decently support and provide for, and take care of the said Mary, and that, in case of the sickness of the said Mary, she shall be well and faithfully taken care of and attended by a physician and other necessary attendants, and that the said Hannah, the wife of said Samuel, and daughter of said Mary, shall take care of said Mary and treat her kindly, and as becomes the relation of parent and child.
The leases or grants of land prohibited by the constitution, were such as were held by the tenants, upon a reservation of an annual or periodical rent, or service, to be paid as a compensation for the use of the lands, in contradistinction from a consideration paid for the estate granted. It is still competent to make a grant for life or lives, upon a given consideration, to be paid for *427 the estate. This consideration may be payable all at once, or by instalments, or in services, so that it be not by way of rent. By the constitution, there must be a reservation of rent or service. A reservation is defined to be, a keeping aside, or providing, as where a man lets or parts with his land, but reserves or provides himself a rent out of it, for his own livelihood. (Jacob’s Law Diet., tit. Rent.) And a rent is said to be a sum of money or other consideration, issuing yearly out of lands or tenements. (Plowden 132,138,141.) Blackstone defines rent or reditus, as a compensation or return, it being in the nature of an acknowledgment given for the possession of some corporeal inheritance. And it is defined to be a yearly profit, issuing out of lands. It must be a profit; but it is not necessary that it should be in money; for spurs, capons, horses, corn and other matters are frequently rendered for rent. This profit must be certain, or capable of being reduced to a certainty; it must also issue yerrly. (2 Bl. Com. 41; Jacob’s Law Die., tit. Rent.)
Now, the consideration agreed to be rendered for the use of the lands in question, though it was to consist in services, cannot be characterized as rent, or service rendered, *within the meaning of the constitution. It was a continuing consideration, and not rent; it *- was payable, not entirely for the use of the lands; but, in part, it was in considesation of the appellant’s agreement to devise the inheritance to the defendants, and in part, for the use of the personal estate. Again, the agreement to take care of the appellant and treat her kindly as becomes the relation of parent and child, is certainly not in the nature of rent. The covenant might be broken by unkind and unfilial treatment, notwithstanding a supply for all her physical wants were provided. If rent, it could either be distrained for, or recovered by action. In this case, no distress would lie, for want of certainty, and great difficulty would exist in *428 recovering for a breach of the defendant’s covenant by way of rent. It is difficult to put a value, in dollars and cents, upon the kindness and affection due from a daughter to a mother; and it is impossible to say, how large a portion of the services were intended as a compensation for the use of the piece of land in suit; and how much for the appellant’s agreement to devise the inheritance.
We are, therefore, of the opinion, that this agreement is not within either the letter or the spirit of the constitutional prohibition. The services were not reserved as rent, but were to be in consideration for the conveyance of the estate, and for the .executory agreement of the appellant to devise the farm. It was, from its very nature, a continuing consideration, and perhaps, for the non-performance of the conditions — by neglecting to take proper care of the appellant, or by unkind and un'filial treatment — she might sustain an action to recover back the land; but upon this point we do not intend to express an opinion.
It is apparent from the written instrument, that it was one in which the interests of the respondent were more cared for, than those of the appellant. But if entered into with a full knowledge of all its provisions, and without the use of any undue influence, we do not see that the appellant has any remedy. The judgment must, therefore, be affirmed.
*Johnson, J.
— Article I., § 14, of the constitu5?» /j Kj | I J tian, provides as follows: “ No lease or grant of agricultural land, for a longer period than twelve years, hereafter made, in which shall be reserved any rent or service of any kind, shall be valid.” If we shall be of opinion, that by the instrument executed between the plaintiff and the defendant and his wife, bearing date 26th November 1847, no rent or service of any kind is *429 reserved, the-judgment below must be affirmed, for then it does not come within the constitutional prohibition.
The instrument in question is somewhat singular in its character. The plaintiff conveys to the defendant all her real estate, during her life, and all her personal estate, except money and such parts of her personal estate as she shall dispose of, for the same period. ' The plaintiff then covenants that she will devise to the defendant’s wife, or to her executors, in trust to convey to the defendant’s wife, a certain parcel of land of about twenty-seven acres, such devise or conveyance to be to the defendant’s wife and her children living at the plaintiff’s death, jointly. The defendant covenants that he will remove on to the land, and that during the plaintiff’s life, he will comfortably and decently support, and provide for, and take care of her, according to her condition in life; that in case of sickness, she shall be well and faithfully taken care of, and attended" by a physician and other necessary attendants, and that the defendant’s wife (plaintiff’s daughter) shall take care of the plaintiff and treat her kindly, and as becomes the relation of parent and child.
The covenant needs only to be looked at, to see that it does not reserve rent or service, in the technical sense of those terms, but only imposes personal obligations binding on the covenantor. Rent is a certain yearly profit in money, provisions, chattels or labor, issuing out of lands and tenements, in retribution for their use. (3 Kent’s Com. 460.) It is a certain and periodical return. The covenant in this case is for nothing certain in amount, nor periodical in time of performance.
We ought not, however, to dispose of this case, without some observation upon the shape in which it is presented. There *is no exception in the case; but ^ in lieu of proper exceptions, we are furnished ^ with a stipulation between the parties, that the plain- ' tiff’s counsel shall be considered as having duly excepted *430 to the finding and decision of the judge. The cause was tried before a judge, without a jury, and under § 268 of the code of 1849, the party complaining of the decision should have excepted and made his bill of exceptions, in the same way as if the trial had been by jury. Had our conclusion upon the question of law involved, been favorable to the plaintiff, we should not have felt at liberty to reverse the judgment, on these papers, and we are glad to have the opportunity of correcting the practice, in a case where we can do so, without disregarding the merits.
Judgment affirmed.[1]

 To the same effect, see Parsell v. Stryker, 41 N. Y. 480; and Rutherford v. Graham, 4 Hun 796.